
JUDGE CARTER

David Abrams, Attorney at Law (DA-8126)
299 Broadway Suite 1700
New York, New York 10007
Tel. 212-897-5821 dnabrams@gmail.com

12 CV 2294

United States District Court
Southern District of New York

---

Thomas Dugan,

       Plaintiff,

- against -

Quad/Graphics, Inc.

       Defendants.

Index No.:



## COMPLAINT

Plaintiff, complaining of the Defendant by his attorney, David Abrams, Attorney at Law, respectfully sets forth and alleges as follows:

**I.   Introduction**

1. This is an action for unpaid overtime/wages under the Fair Labor Standards Act and New York Wage & Hour Regulations. Plaintiff also asserts a claim of sex discrimination/harassment and perceived sexual orientation harassment under the New York City Human Rights Law.

**II.   Parties**

2. Plaintiff Thomas Dugan ("Mr. Dugan") is a natural person residing in the State of New York, County of Kings.

3. Upon information and belief, defendant Quad/Graphics, Inc. (the "Employer") is a Wisconsin business corporation with a principal place of business in the State of Wisconsin, County of Waukesha.

### III. Venue & Jurisdiction

4. Venue in the Southern District of New York is appropriate pursuant to 28 U.S.C. Section 1391(b)(2) in that defendants reside in New York and, upon information and belief, the Primary Employer maintains a continuous and systematic presence in the Southern District.

5. Subject matter jurisdiction over this action exists pursuant to 28 U.S.C. Sections 1331 and 1367 in that a claim is made that arises under the laws of the United States, specifically the Fair Labor Standards Act and the remaining claims for part of the same case or controversy.

6. Personal jurisdiction exists over the Employers in that this action arises from their activities in New York, specifically the employment of the Plaintiff.

### IV. Background

7. Upon information and belief, the Employer operates a commercial printing business.

8. Mr. Dugan was employed by the Employer, including any predecessors in interest. He started on the Employer's payroll on or about April 1, 2005 working as a color proofer. He was subsequently promoted to production lead in or about January of 2007. He was discharged in or about October 12, 2011.

9. At all relevant times, Mr. Dugan was an hourly employee. His terminal rate of pay was $17.55 per hour.

10. While employed as a production lead, Mr. Dugan worked an average of approximately 12 unpaid overtime hours per week, i.e. hours worked in excess of 40 for which he did not receive compensation. This work was done for the benefit of the Employer and with the Employer's knowledge. i.e. Mr. Dugan was performing his normal work duties on the Employer's premises in the presence of other workers, including at times managers.

11. Mr. Dugan suffers from a disability in that he has an irregular heartbeat which causes fluids to build up in his body, resulting in an especially obese appearance.

12. Mr. Dugan was regularly harassed on the basis of this, for example other workers would ask him how many sodas or ice creams he had consumed. Other workers suggested that Mr. Dugan's work station was near the Employer's vending machines to give him easy access to the snack and soda products dispensed by those machines. On one occasion, when somebody's soda was stolen from the Employer's refrigerator, many other workers suggested that it was Mr. Dugan in particular who had taken the soda.

13. The Employer's management was aware of and participated in these activities. For example, on one occasion, Mr. Dugan's direct supervisor sent an e-mail to Mr. Dugan and numerous other workers with a video of a restaurant known as the "Heart Attack Grill" which specializes in serving unhealthy foods. The video depicted, among other things, an obese man eating a very large hamburger. The supervisor's e-mail stated, in effect, that the supervisor had found a video of Mr. Dugan eating at his favorite restaurant.

14. In addition, Mr. Dugan was harassed on the basis of his perceived sexual orientation. This began when Mr. Dugan went with a co-worker to various night clubs in

order to see and hear the performance of a particular disk jockey. One of the night clubs has a reputation of primarily serving a homosexual clientele and other co-workers learned that Mr. Dugan had visited this night club with this co-worker.

15. Subsequently, Mr. Dugan's co-workers started to harass him based on perceived sexual orientation. For example, when Mr. Dugan was hospitalized, a co-worker suggested to him that another male co-worker slept had slept with him in the hospital. On another occasion, an image was circulated of the actor Sasha Baron Cohen in his "Borat" role, completely undressed, with a picture of Mr. Dugan inserted on Mr. Cohen's right buttock.

16. As with the other harassment, the Employer's management was aware of and participated in this harassment against Mr. Dugan. Indeed, the picture of Mr. Dugan referred to in the preding paragraph would only have been available to the Employer's management.

17. Mr. Dugan, who is male, was discharged in October, 2011, allegedly for disruptive behavior including referring to a female employee as a "cunt."

18. Although Mr. Dugan denies these charges, the Employer has tolerated similar behavior from female employees.

19. For example, a few years earlier a female co-worker named A.F. had had an extramarital affair with a male co-worker named J.F. who was married to a female employee, M.F. nee M.R. After the affair ended, A.F. repeatedly engaged in disruptive behavior, including referring to M.F. as a "cunt" and a "bitch." However, the Employer did not discipline A.F. over this conduct even though it was aware of the conduct.

## IV. Causes of Action and Demand for Relief

### Count One: Violation of the Fair Labor Standards Act

20. The allegations contained in paragraphs 1 through 19 are incorporated as if restated herein.

21. Plaintiff was an employee of the Employer within the meaning of the Fair Labor Standards Act.

22. Upon information and belief, the Defendant was employers within the meaning of the Fair Labor Standards Act and subject to the same Act in that at all times relevant to this Complaint, the Employer had revenues in excess of $500,000 per year and had employees who were engaged in commerce or who handled goods which have been in commerce.

23. The Employer violated the Fair Labor Standards Act in that it did not properly compensate plaintiff for the overtime he worked.

### Count II: Violation of New York Wage & Hour Law

24. The allegations contained in paragraphs 1 through 22 are incorporated as if restated herein.

25. Mr. Dugan was an employee of the Employer within the meaning of New York Wage Regulations, specifically N.Y.C.R.R. Labor Section 138 et seq.

26. The Employer was an employer within the meaning of those same regulations.

27. The Employer violated the above regulations in that it did not properly compensate Mr. Dugan for the overtime hours he worked.

### Count III: Violation of the New York City Human Rights Law

28. Mr. Dugan was an employee and the Employer was an employer within the meaning of the New York City Human Rights Law in that at all times relevant to this Complaint, the Employer had 4 or more employees. Further, at all relevant times Mr. Dugan was employed within the city of New York, specifically the Employer's facility in Manhattan.

29. Mr. Dugan was subject to frequent lewd, sexually suggestive and/or inappropriate behavior by and/or with the knowledge of the Employer in violation of the New York City Human Rights Law.

30. The Employer discriminated against Mr. Dugan on the basis of gender by discriminatorily discharging him.

WHEREFORE Plaintiff demands judgment against the Employer in the amount of his unpaid overtime and/or wages and/or wage supplements, together with liquidated, compensatory, punitive and other multiple damages, costs, fees, interest; and such other and further relief that the Court deems just.

Respectfully submitted,

_David Abrams_
 Attorney for Plaintiff
Mr. Dugan

299 Broadway Suite 1700
New York, NY 10007
Tel. 212-897-5821
dnabrams@gmail.com

Dated:    New York, NY
          March 28, 2012